IN THE CIRCUIT COURT OF THE SIXTH JUDICAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA
CIVIL DIVISION

JOHN MORTON,

    Plaintiff,

vs.                                          CASE NO.:

NEXAGEN NETWORKS, INC.,
a foreign corporation; and
INSPERITY PEO SERVICES, L.P.,
a foreign limited partnership,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, Plaintiff, JOHN MORTON, by and through his undersigned counsel, sues the Defendants, NEXAGEN NETWORKS, INC., a foreign corporation; and INSPERITY PEO SERVICES, L.P., a foreign limited partnership, and states as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs, interest, and attorney's fees.

2. Venue lies within Pinellas County because, at all times material herein, Defendants had and have maintained an agent or other representative in Pinellas County, Florida and/or because a substantial part of the events giving rise to this claim arose in this Judicial District.

### PARTIES

3. At all times material herein, Plaintiff, JOHN MORTON (hereinafter "Plaintiff" or "Morton"), was and is a resident of Pinellas County, Florida and employed by Defendants in Pinellas County, Florida.

4. At all times material herein, Defendant, NEXAGEN NETWORKS, INC., (hereinafter "Defendant" or "Nexagen"), and was and is a foreign corporation, doing business in

Pinellas County, Florida.

5. At all times material herein, Defendant, INSPERITY PEO SERVICES, L.P. (hereinafter "Defendant" or "Insperity"), and was and is a foreign limited partnership, authorized to and doing business in Pinellas County, Florida.

6. Defendant, Nexagen, and/or its subsidiaries, through their agents and employees, are subject to the jurisdiction of the courts of the State as Florida, on multiple legal grounds, including the following:

(a) Defendant, Nexagen, regularly operates, conducts, engages in, and/or carries on a business or business venture in the State of Florida and/or has an office or agency in the State and/or has committed a tortious act within the State, which has given rise to the subject cause of action;

(b) Defendant, Nexagen, engaged in solicitation or service activities within the State, at the time of the subject discrimination of Plaintiff;

(c) Defendant, Nexagen, engages in substantial and not isolated activity within this state, including the employment of personnel in the State and the execution of contracts in the State;

(d) Defendant, Nexagen, and its owner, Rajesh Parikh, as well as Vice-President Eddie Pena, had an ongoing business relationship with the Tampa Microwave Company, located in both Tampa and St. Petersburg, Florida, and were developing product strategies together. Plaintiff reported, in part, to Mr. Pena who was re-located to Florida as part of Nexagen/Insperity's business development enterprise with United States Marine Corps ("USMC")/Tampa Microwave. Plaintiff accompanied Mr. Pena to one of the business meetings in an "expert advisor" capacity during the second term of Plaintiff's employment with Defendants. In addition, one of the key Nexagen program reviews Plaintiff was a part of with Mr. Pena on the last assignment was performed in

Tampa at an office of Tampa Microwave. This was in 2016 with both USMC Program Officers and Nexagen Program Management, including the owner of Nexagen, Mr. Parikh.

7. The Defendant corporations will be referred to collectively as "Defendants."

8. Upon information and belief, at all times material herein, Defendants, Nexagen and Insperity, were Plaintiff's joint and/or common employers and/or were a common enterprise, and/or Defendant, Insperity, was an agent of Defendant, Nexagen, on the following, but not exclusive, grounds:

(a) Several documents indicate that Insperity is a "joint employer" and/or agent of Nexagen. In January 2013, Insperity, identified as "co-employer," entered into an Employment Agreement with Plaintiff. The Agreement also provides, in pertinent part, that "Pursuant to the co-employment relationship with [Nexagen], Employee understands and agrees that Insperity reserves a right of direction and control over Employee, including a right to hire or terminate, and a right to resolve workplace disputes not subject to a collective bargaining agreement."

(b) In addition, according to Section 2, entitled "At-Will Employment," either Insperity or Employee (with no reference to Nexagen) can terminate, with or without cause, the subject employment relationship. Insperity's right to discharge Plaintiff is also acknowledged in Section 5, in which it is stated, in pertinent part, that ". . . if Insperity discharges Employee for unsatisfactory work performance under the Florida unemployment compensation law..." Furthermore, Insperity appears to have direct input in the nature of the work environment (i.e., free of discrimination and harassment), as set forth in Section 7 of the Agreement.

(c) While this Agreement was executed for purposes of Mr. Morton's first tenure of employment with Nexagen and Insperity, it clearly demonstrates the co-employment relationship that Insperity has with Nexagen and their employees, a relationship which remained unchanged pursuant to Insperity's Position Statement.

(d) Other documents and communications demonstrate Insperity's active and exercised role as a joint employer (with Nexagen) for purposes of Plaintiff's employment and the subject claim. Plaintiff's W-2 reflects "Insperity PEO Services, L.P." as his "employer."

(e) In addition, the termination letter to Plaintiff, on Insperity letterhead and signed by Insperity's Human Resources Specialist, states, in pertinent part, that "This letter is to inform that effective July 27th, 2016, your employment with Nexagen and Insperity PEO Services, L.P. ("Insperity") will end due to ending of contract."

(f) Furthermore, a July 25, 2016 e-mail from Seema Parikh advised Plaintiff to contact "Insperity's Unemployment Hotline" to present himself for rehire and unemployment documents through the Florida Department of Economic Opportunity ("DEO") list Plaintiff's employer as "Insperity PEO Services, LP."

(g) Insperity was intrinsically and inextricably involved with Nexagen regarding Human Resources decisions, including those related to termination.

## GENERAL ALLEGATIONS

9. At all times material, Defendant acted with malice and with reckless disregard for Plaintiff's state protected rights.

10. At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employer.

11. Defendant is an employer as defined by the laws under which this action is brought, and employs the requisite number of employees.

12. On July 14, 2017, Plaintiff filed a Charge of Discrimination with the Florida Commission on Human Rights ("FCHR") and more than 180 days have passed since the filing of said charge. *A copy of the Charge of Discrimination is attached hereto as Exhibit "A."*

13. Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

## FACTUAL ALLEGATIONS

14. In January 2013, when Plaintiff was 57 years old, he was hired by Defendants, Nexagen and Insperity.

15. Plaintiff was denied health insurance benefits as a condition for employment. On April 16, 2014, Plaintiff received a furlough notice, indicating that he would be off work from May 1, 2014 through July 24, 2014. The furlough notice stated that benefits (if elected) would be paid during the furlough. This implied that benefits were available from the initial relationship Plaintiff began working for Nexagen and Insperity in January 2013.

16. On June 19, 2014, Defendant, Insperity, sent a letter to Plaintiff (with a copy to Defendant, Nexagen) regarding "Important Information Regarding Your Employee Benefits," which established the furlough date and final termination of Plaintiff's employment, which was July 24, 2014, as stated in the said letter.

17. Thereafter, on August 18, 2014, Plaintiff was contacted by Nexagen VP of Operations, Eddie Pena, who offered Plaintiff the position of "Provisioning Analyst" in a virtual office capacity, at the same rate of pay Plaintiff previously made with the company. This offer was post-furlough and was for "full-time, direct status" with benefits. Plaintiff was assured by Mr. Pena that benefits were available to Plaintiff, if he so desired. Mr. Pena advised that these benefits would be available during open enrollment, from November 2014 through January 1, 2015. Given this assurance, Plaintiff returned to work in August 2014.

18. Pursuant to Mr. Pena's representation, on December 3, 2014, Plaintiff enrolled in (family) health care benefits, given Plaintiff's standing as a full-time, salaried, direct exempt

5

employee. The enrollment was for Plaintiff and his wife and was accepted per their website acknowledgement.

19. On January 6, 2015, Plaintiff was contacted by an HR Representative inquiring as to why Plaintiff had selected health insurance benefits and advising that Plaintiff was not entitled to such benefits. The HR representative attempted to connect the company's original "Offer Letter – Jan 2013" (which was a separate employment) to the August 2014 (post-furlough) employment offer by Mr. Pena, indicating that, as Plaintiff had declined benefits during Plaintiff's initial employment with the company (when Plaintiff had not in fact declined such benefits) Plaintiff was not entitled to such benefits during this second tenure of employment.

20. Notably, Plaintiff later learned that all employees (with the exception of those employees who had coverage through their spouses' employment or veteran-related coverage) were offered health insurance (and other) benefits. All of these employees were younger than Plaintiff. It is highly likely that Plaintiff was eligible from the first day of his employment – in January 2013, or certainly, after the "6 month trial period."

21. During Plaintiff's employment, all of his work requirements were met for schedule and quality purposes as well as IAW contractual obligations.

22. In October 2015, Plaintiff's wife suffered a heart issue requiring overnight hospitalization. Health care benefits for this stay were paid under the group health plan in which Plaintiff enrolled through his employment in January 2015.

23. During the time frame when Plaintiff's wife was hospitalized, Defendants failed to acknowledge and complete Plaintiff's formal Employee Review after he submitted it through Insperity's Perform Smart system in the 3rd quarter of 2015.

24. On July 27, 2016, with only three (3) days notice, Plaintiff was terminated. Although Plaintiff was advised that the termination was due to the lack of available work, there is

direct evidence to the contrary. First, there was considerable work remaining to be performed on the program. Second, Defendant, Nexagen, had also been provided a large military contract at the time Plaintiff was terminated.

25. Furthermore, on the last day of Plaintiff's employment, he received a telephone call from Sarah Ellis, a young woman (believed to be in her 20's or 30's) who identified herself as an employee taking over Plaintiff's job functions and asking for insight and/or work details regarding the program status. Plaintiff learned in June 2016 (after chairing a conclusive and important conference) that his replacement was planned as early as April 2016 in hiring and training younger staff (with less health risk) without his knowledge.

26. This is a clear demonstration that there was ample work and that the reason provided to Plaintiff was pretext for the actual basis for Plaintiff's termination, namely, his age and the fact that Nexagen and Insperity did not wish to continue coverage for Plaintiff and his wife, given their age. At the time of Plaintiff's termination, Plaintiff and his wife were both 60 years old. Nexagen and Insperity's perception of healthcare cost risk associated with coverage for Plaintiff and his wife partially confirmed by the October 2015 hospitalization event along with high prescription costs, led them to terminate Plaintiff's employment.

27. As further evidence of age discrimination in the termination of Plaintiff, is the fact that, shortly after Plaintiff's termination (on the basis that there was a shortage of work), Defendants attempted to re-employ Plaintiff on a 1099/independent contractor basis (with no benefits). In fact, only 20 days passed between the time of Plaintiff's termination and when Nexagen employees reached out to Plaintiff to perform work on a 1099/independent contractor basis. These offers continued as late as October 2016.

28. In addition and/or, in the alternative, Defendants' post-termination offers of employment are evidence of a continuing violation of Plaintiff's rights and/or constitute

independent discriminatory acts in that, despite the fact that Defendants offered benefits to other (younger) employees, they did not offer Plaintiff such benefits (including health insurance benefits) with these offers of employment.

## COUNT I
## FLORIDA CIVIL RIGHTS ACT ("FCRA") -- AGE DISCRIMINATION

29. Plaintiff realleges and adopts the allegations stated in paragraphs numbered 1 through 28, as if set out in full hereafter.

30. Plaintiff is a member of a protected class, as defined by the Florida Civil Rights Act ("FCRA"), Section 760.01, *et seq., Florida Statutes.*

31. By the conduct described above, including the termination of Plaintiff, as well as the subsequent offers of employment without benefits (including health insurance), Defendants engaged in unlawful employment practices and discriminated against Plaintiff on account of his age, in violation of the FCRA.

32. Defendants knew, or should have known, of the discrimination.

33. As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer the following damages:

    a. Back pay and benefits;

    b. Interest on back pay and benefits;

    c. Front pay and benefits;

    d. Compensatory damages, including for emotional pain and suffering;

    e. Injunctive relief;

    f. Attorney's fees and costs; and

    g. For any other relief this Court deems just and equitable.

**WHEREFORE,** Plaintiff, JOHN MORTON demands a trial by jury and a judgment against the Defendants, NEXAGEN NETWORKS, INC.; and INSPERITY PEO SERVICES, L.P.,

for damages in an amount within the jurisdictional limits of this Court, to wit: More than Fifteen Thousand ($15,000.00) plus attorney's fees, costs, and for such other relief to which Plaintiff may be justly entitled.

## DEMAND FOR JURY TRIAL

34. Plaintiff demands a jury trial on all issues so triable.

**DATED:** January 16, 2018.

          FLORIN GRAY BOUZAS OWENS, LLC

          */s/ Christopher D. Gray*
          **CHRISTOPHER D. GRAY, ESQUIRE**
          Florida Bar No.: 902004
          Primary:    chris@fgbolaw.com
          Secondary:  debbie@fgbolaw.com
          **WOLFGANG M. FLORIN, ESQUIRE**
          Florida Bar No.: 907804
          wolfgang@fgbolaw.com
          **ROBIN M. OROSZ, ESQUIRE**
          Florida Bar No.: 724769
          robin@fgbolaw.com
          16524 Pointe Village Drive, Suite 100
          Lutz, FL 33558
          Telephone (727) 254-5255
          Facsimile (727) 483-7942
          Attorneys for Plaintiff