UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN MORTON,

    Plaintiff,

v.    Case No. 8:18-cv-386-T-24 MAP

NEXAGEN NETWORKS, INC. and
INSPERITY PEO SERVICES, L.P.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss.[1] (Doc. No. 4). Plaintiff opposes the motion. (Doc. No. 9). As explained below, the motion is denied.

**I. Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id.

---

[1] The Court previously granted this motion to the extent that Defendant Nexagen Networks, Inc. moved to quash service. (Doc. No. 10). Thereafter, the parties stipulated that the instant motion to dismiss will serve as Defendant Nexagen's response to the complaint. (Doc. No. 11).

(citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II. Background**

Plaintiff John Morton alleges the following in his complaint (Doc. No. 2): In January of 2013, when Plaintiff was 57 years old, Plaintiff was hired by Defendants Nexagen Networks, Inc. ("Nexagen") and Insperity PEO Services, L.P.[2] At that time, he was denied health insurance benefits as a condition of employment.

On April 16, 2014, Plaintiff received a furlough notice indicating that he would be off work from May 1, 2014 through July 24, 2014. The furlough notice stated that benefits, if elected, would be paid during the furlough. Plaintiff interpreted the furlough notice as implying that benefits were available, but denied, when he began employment with Defendants. On June 19, 2014, Plaintiff received notice that his employment would be terminated on July 24, 2014.

On August 18, 2014, Plaintiff was offered another position with Defendants in a virtual office capacity with benefits. Plaintiff was told that benefits would be available during open enrollment, from November 2014 through January 1, 2015. On December 3, 2014, Plaintiff enrolled in family healthcare benefits for his wife and himself.

Plaintiff later learned that all younger employees were offered health insurance benefits.

---

[2]Plaintiff contends that Defendants were his joint employers.

Therefore, Plaintiff now believes that he was eligible for health insurance benefits during his first period of employment (prior to July 24, 2014).

In October of 2015, Plaintiff's wife suffered a heart issue that required overnight hospitalization. Healthcare benefits were paid under the group health plan that Plaintiff had enrolled in.

On July 27, 2016, with only three days notice, Plaintiff's employment was terminated. Plaintiff was told that his termination was due to a lack of available work, but Plaintiff contends that there is direct evidence to the contrary. Specifically, there was considerable work remaining to be done, and Defendant Nexagen had been provided a large military contract at the time of Plaintiff's termination. Plaintiff also contends that he was replaced by a younger woman in her twenties or thirties.

Thus, Plaintiff contends that the reason given for his termination—lack of work—was a mere pretext for the real reasons: his age and the fact that Defendants did not wish to continue providing healthcare coverage for Plaintiff and his wife due to their age (both were over 60 years old at the time of Plaintiff's termination). Plaintiff contends that Defendants' perception of the cost of healthcare coverage for Plaintiff and his wife (which was partially confirmed by his wife's hospitalization and their high prescription costs) led Defendants to terminate Plaintiff's employment.

Plaintiff contends that there is further evidence of discrimination due to the fact that within twenty days after his termination, Defendant Nexagen reached out to Plaintiff and asked to hire him on an independent contractor basis with no benefits. These employment offers continued through October 2016. Again, Plaintiff points out that Defendants offered health

benefits to younger employees but would not offer them to him.

As a result, on July 14, 2017, Plaintiff filed a charge of age discrimination with the Florida Commission on Human Rights ("FCHR"). He indicated that he had suffered discrimination from July 27, 2016 through October 2016. Thereafter, Plaintiff filed the instant lawsuit in state court, asserting an age discrimination claim under the Florida Civil Rights Act ("FCRA"). The case was removed to this Court on the basis of complete ERISA preemption (federal question jurisdiction) and diversity jurisdiction.

### III. Motion to Dismiss

In the instant motion, Defendants contend that Plaintiff's age discrimination claim is either completely preempted by ERISA and/or expressly preempted by ERISA and should be dismissed. As explained below, the Court rejects this argument and denies Defendants' motion.

ERISA is a comprehensive statute designed to regulate employee benefit plans. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990). The statute includes safeguards to preclude abuse and protect employees' rights. See id. Among these safeguards are two provisions that affect preemption. First, there is the express preemption provision found in ERISA § 514(a), 29 U.S.C. § 1144(a), which generally provides that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan."[3] Second, there is complete preemption when: (1) the plaintiff could have brought his claim under ERISA § 502(a), 29 U.S.C. § 1132(a); and (2) there is no other independent legal duty that supports the plaintiff's

---

[3] Courts refer to ERISA § 514(a), 29 U.S.C. § 1144(a), using many terms, including express preemption, defensive preemption, conflict preemption, and explicit preemption.

4

claim.[4]  See  See Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004); Conn. State Dental Assoc. v. Anthem Health Plans, Inc., 591 F.3d 1337, 1345 (11th Cir. 2009).

The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans, and ERISA's preemption provisions are intended to ensure that this regulation is an exclusively federal concern.  See Davila, 542 U.S. at 208.  In order to determine whether a state claim is preempted by ERISA, courts look at congressional intent by examining the explicit statutory language, structure, and purpose of the ERISA statute.  See Ingersoll-Rand, 498 U.S. at 137–38.  Accordingly, this Court will analyze whether Plaintiff's state law age discrimination claim is preempted under ERISA.

### A.  Complete Preemption

As previously stated, a plaintiff's claim is completely preempted when two prongs of the complete preemption test are met: (1) the plaintiff could have brought his claim under ERISA § 502(a), 29 U.S.C. § 1132(a); and (2) there is no other independent legal duty that supports the plaintiff's claim.  Defendants argue that Plaintiff's age discrimination claim is completely preempted, because Plaintiff is essentially claiming that Defendants terminated his employment because they did not want to continue providing healthcare coverage for Plaintiff and his wife, especially given his wife's prior hospitalization and their high prescription costs.  Defendants contend that such a claim is covered by ERISA.

Pursuant to ERISA § 510, 29 U.S.C. § 1140, it is unlawful for an employer to discharge a participant for the purpose of interfering with the attainment of any right that the participant may

---

[4]Courts refer to this type of preemption using many terms, including complete preemption, super preemption, and implicit preemption.

become entitled to under an ERISA plan. Furthermore, ERISA § 510, 29 U.S.C. § 1140, provides that a claim for such a violation can be brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a). Therefore, Defendants contend that the first prong of the complete preemption test is met.

However, in order for the second prong of the complete preemption test to be met, there must not be any other independent legal duty that supports Plaintiff's claim. Plaintiff argues that the FCRA provides an independent legal basis for his age discrimination claim.

Courts have found that when a plaintiff alleges mixed motives for his termination—that he was terminated because of the employer's benefits-defeating motive and because of his age—the plaintiff has alleged a legal basis, independent of ERISA, for his claim, and as such, his age discrimination claim is not completely preempted. See Ruby v. Sandia Corp., 699 F. Supp.2d 1247, 1270–78 (D.N.M. 2010); Howell v. Lockheed Martin Corp., 2013 WL 1314439, at *5–6 (N.D. W. Va. Mar. 26, 2013). In this case, Plaintiff has alleged that he was terminated and replaced by a younger woman. Additionally, Plaintiff alleges that he was offered subsequent employment without healthcare benefits while younger employees were offered healthcare benefits. Thus, Plaintiff's claim—that Defendants terminated him because of his age and treated him differently due to his age—is supported by a legal basis independent of ERISA.[5] Accordingly, the Court denies Defendants' motion for dismissal based on complete preemption.

---

[5]Had Plaintiff only alleged a benefits-defeating motive for his termination and simply called it age discrimination, such a claim would be completely preempted by ERISA. See Gonzalez v. Wells Fargo Bank, N.A., 2013 WL 5435789, at *11 (S.D. Fla. Sept. 27, 2013)(finding that the plaintiff's expense-avoidance disability discrimination claim was completely preempted, because it was based on a violation of ERISA § 510 that could be enforced through ERISA § 502(a) and there was no other independent legal basis for the claim).

**B. Express Preemption**

ERISA's express preemption provision, found in ERISA § 514(a), 29 U.S.C. § 1144(a), generally provides that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan." Thus, if a state law relates to an employee benefit plan, it is expressly preempted by ERISA. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987). The express preemption provision of ERISA is deliberately expansive. See id. at 45–46. As such, a state law may relate to a benefit plan even if the law is not specifically designed to affect such plans. See Ingersoll-Rand, 498 U.S. at 139.

A state law claim is expressly preempted when two elements are present: (1) the plan at issue is an ERISA employee benefit plan; and (2) the plaintiff's claim relates to the ERISA plan. See Gonzalez v. Wells Fargo Bank, N.A., 2013 WL 5435789, at *8 (S.D. Fla. Sept. 27, 2013). Therefore, when a plaintiff's state law claim is that his employer terminated him in order to avoid paying benefits under an ERISA plan, the plaintiff's claim relates to an ERISA plan and is expressly preempted. See Ingersoll-Rand, 498 U.S. at 140; Gonzalez, 2013 WL 5435789, at *9 (stating that "[w]here an employee alleges that a principal reason for his discharge is his employer's desire to avoid paying benefits due under an ERISA plan, that claim necessarily 'relates' to the plan and is expressly preempted by ERISA").

Defendants contend that the healthcare plan at issue is an ERISA plan. Pursuant to 29 U.S.C. § 1002(1), an ERISA healthcare plan is defined as any plan established or maintained by an employer to the extent that such plan was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits. Defendants have attached a copy of

7

their healthcare plan documents to their motion to dismiss, which appears to support their contention that the healthcare plan at issue is an ERISA plan.

Next, Defendants argue that Plaintiff's age discrimination claim relates to an ERISA plan, because Plaintiff has alleged a benefit-defeating motive for his termination. However, as previously stated, Plaintiff has alleged a mixed motive for his termination—a benefits-defeating motive, as well as an age discrimination motive. Even if the Court accepted Defendants' argument, the Court's inquiry would not end regarding Plaintiff's allegations of age discrimination.

ERISA § 514(d), 29 U.S.C. § 1144(d), provides that the ERISA statute shall not be "construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." Plaintiff argues that his age discrimination claim under the FCRA is patterned after the Age Discrimination in Employment Act ("ADEA"). Therefore, Plaintiff argues that to the extent that the FCRA age discrimination laws play a significant role in the enforcement of the ADEA, his age discrimination claim is exempted from preemption under ERISA § 514(d). To hold otherwise, Plaintiff argues, would impair the enforcement of the ADEA. As explained below, Plaintiff's argument has a basis in the case law.

In Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 88 (1983), the issue before the Court was whether New York's state law forbidding pregnancy discrimination in employee benefit plans was preempted by ERISA. The Court concluded that the state law related to an ERISA plan; however, its inquiry did not end there. See id. at 100. Next, the Court considered whether that state law played a significant role in the enforcement of Title VII such that preemption of that state law would impair the enforcement of Title VII. See id. In analyzing the issue, the Court

8

stated the following:

> Given the importance of state fair employment laws to the federal enforcement scheme, pre-emption of the [New York] Human Rights Law would impair Title VII to the extent that the Human Rights Law provides a means of enforcing Title VII's commands. Before the enactment of ERISA, an employee claiming discrimination in connection with a benefit plan would have had his complaint referred to the New York State Division of Human Rights. If ERISA were interpreted to pre-empt the [New York] Human Rights Law entirely with respect to covered benefit plans, the State no longer could prohibit the challenged employment practice and the state agency no longer would be authorized to grant relief. The EEOC thus would be unable to refer the claim to the state agency. This would frustrate the goal of encouraging joint state/federal enforcement of Title VII; an employee's only remedies for discrimination prohibited by Title VII in ERISA plans would be federal ones. Such a disruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), "modify" and "impair" federal law.

Id. at 102. As a result, the Court held that the New York law was not pre-empted with respect to ERISA benefit plans insofar as it prohibited practices that were unlawful under federal law. See id. at 108.

Thereafter, in Devlin v. Transportation Communications Intern. Union, 173 F.3d 94, 99, 101 (2d Cir. 1999), the court addressed the issue of whether state age discrimination laws were preempted by ERISA, and the court found that they were not preempted. The court began by finding that the state laws at issue related to an ERISA plan, and then the court addressed whether the exception set forth in § 514(d) applied. See id. at 99–100. The court noted that the Court in Shaw found that exception set forth in § 514(d) applied to the state discrimination law, which helped to enforce Title VII. See id. at 100. The court went on to state that Shaw's "rationale applies with equal force to the age discrimination provisions of the [state] Human Rights Law." Id. The court then analyzed the exception set forth in § 514(d) as applied to age

9

discrimination claims and stated the following:

> Like Title VII, the Age Discrimination in Employment Act . . . ("ADEA"), provides for what the Supreme Court in Shaw termed "joint state/federal enforcement" of the rights protected by federal antidiscrimination law. Significantly, both Title VII and the ADEA require plaintiffs to resort to available state procedures to vindicate their rights, before filing suit in federal court. And the federal Equal Employment Opportunity Commission ("EEOC") refers complaints filed with it in New York under either Title VII or the ADEA to the counterpart state agency. Although the interaction between federal and state law is not entirely transferable from the Title VII context to the ADEA context, it is nonetheless apparent that both federal statutes rely upon a "joint state/federal enforcement" scheme.
>
> Thus, the New York Human Rights Law is saved from preemption in this case precisely to the extent that its protections track those of the ADEA. We have consistently held that "[a]ge discrimination claims brought under the New York State Human Rights Law . . . are governed by the same standards as those brought under the ADEA." Accordingly, we are able to conclude that no portion of the Human Rights Law—as it relates to appellants' age discrimination claims—will be pre-empted by ERISA.

Id. at 100–01 (internal citations omitted).

Likewise, in Loffredo v. Daimler AG, 500 Fed. Appx. 491, 498 (6th Cir. 2012), another court addressed the issue of whether state age discrimination laws were preempted by ERISA, and the court found that they were not. In finding that the exception set forth in § 514(d) applied, the court stated the following:

> Like Title VII, the Age Discrimination in Employment Act uses state-law counterparts to bolster enforcement of the federal law. Section 1144(d) [ERISA § 514(d)] thus preserves state-law claims from preemption to the extent they mirror ADEA claims. The plaintiffs' age-discrimination claim falls into this category. They argue that securitizing the retirement benefits of active employees but not most retired employees had a disparate impact on older beneficiaries. The ADEA covers such claims. Nor is the claim an implausible one: The securitized beneficiaries on average were younger than the retirees whose benefits were not secured.

Id. (internal citations omitted).

Based on the above, the Court agrees with Plaintiff that his age discrimination claim is saved from express preemption due to the exception set forth in § 514(d). Accordingly, the Court denies Defendants' motion on this issue.

### C. Age Discrimination

Finally, Defendants argue that if the Court finds that Plaintiff's age discrimination claim is not preempted, any allegations regarding Plaintiff's first tenure of employment (from January 2013 through July 2014) are time-barred. Defendants argue that since Plaintiff filed his charge of discrimination with the FCHR on July 14, 2017, and discrete acts occurring prior to July 14, 2016 are time-barred. Plaintiff responds that he intends to use Defendants' actions prior to July 14, 2016 to demonstrate the factual background and circumstances leading up to his termination.

The Court agrees with Defendants that Defendants' actions prior to July 14, 2016 cannot be used as a basis for an age discrimination claim. However, "evidence of prior discriminatory treatment, while not actionable itself, may be relevant and probative of the discriminatory behavior of Defendant[s] and is a proper method for Plaintiff to carry [his] burden of showing discriminatory intent." Anderson v. City of Fort Pierce, 2015 WL 10857439, at *3 (S.D. Fla. July 29, 2015)(citing Allen v. County of Montgomery, Ala., 788 F.2d 1485, 1488 (11th Cir. 1986)).

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (Doc. No. 4) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of April, 2018.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record